TRACY & STILWELL, P.C.
Attorneys for Plaintiffs
1688 Victory Boulevard
Staten Island, New York 10314
Email: jtracy@tracyandstilwell.com
Telephone No.: (718) 720-7000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC,
DAVID C. ABRAMS, D.C. and JOHN P. PIAZZA, D.C. and
STATEN ISLAND CHIROPRACTIC ASSOCIATES as
Assignee of JOHN "DOE" and MARY "DOE", Nos. 1 to 63,

**INDEX NO.  09-CV-2276**

**ECF CASE**

**SECOND AMENDED
COMPLAINT**

Plaintiffs,

-against-

AETNA, INC.; AETNA LIFE INSURANCE CO.; AETNA
HEALTH INSURANCE COMPANY OF NEW YORK;
AETNA HEALTH INC. CORPORATE HEALTH
INSURANCE COMPANY; and AETNA HEALTH INC.,
Defendants.
-------------------------------------------------------------------X

PLAINTIFFS, by their attorneys, TRACY & STILWELL, P.C., complaining of the

defendants, respectfully show and allege as follows:

## INTRODUCTION

1.      Plaintiffs, STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC, DAVID

C. ABRAMS, D.C. and JOHN P. PIAZZA, D.C., individually and as assignees of the rights of

their patients who are enrolled in  AETNA health plans bring this action against  the defendants

alleging several violations of the Employee Retirement Income Security Act of  1974

("ERISA"), and tortious interference with business relations.

2.      Plaintiffs contend that from approximately March 2006 to the present and

continuing, defendants, their agents, servants, and employees have established an across the board policy of retrospectively denying all claims submitted to them by plaintiffs and placing the plaintiffs claims into "pre-payment review," the effect of which is that every claim results in: (a) an initial denial of the claim, (b) a request for further documentation, and (c) correspondence sent by defendant's "Special Investigations Unit" to each patient for whom a claim is submitted requiring them to complete an onerous and unnecessary questionnaire, and (d) failure to pay any claim submitted, whether or not additional information is provided.

3.       As the result of defendants' illegal conduct, defendants have lost hundreds of AETNA patients, and have sustained damages both direct and consequential, and have not been paid for the services they have rendered, causing them significant financial harm.

## JURISDICTION

4.       Plaintiffs assert subject matter jurisdiction over their ERISA claims under 28 U.S.C. § 1331, and the related tort claim under 28 U.S.C. § 1367.

## VENUE

5.       Venue is appropriate in this District under , 28 U.S.C. § 1391(b) because this action is not founded upon diversity of citizenship, and: (1) AETNA resides, is found, has an agent in this District, and (2) a substantial part of the events or omissions giving rise to this claim occurred  in this district because AETNA conducts a substantial amount of business in this district and insures and administers group health plans both inside and outside the District, including from offices located in New York.

## THE PARTIES

2

6.      Plaintiff, DAVID C. ABRAMS is a board certified Chiropractor who has been in practice for over twenty years. Dr. ABRAMS received his degree in chiropractic from New York Chiropractic College in 1982, and has been licensed to practice chiropractic in New York since 1982. Dr. ABRAMS has been in the private practice of chiropractic in Staten Island, New York since 1983, and is a resident of the state of New Jersey.

7.      Plaintiff, JOHN P. PIAZZA is a board certified chiropractor who has been in practice for over thirteen years. DR. PIAZZA received his Doctor of Chiropractic degree from Life Chiropractic University in Marietta, Georgia in 1996 and has been licensed to practice in New York State since 1996. DR. PIAZZA has been in the practice of chiropractic in Staten Island since 1996, and is a resident of the state of New York.

8.      Plaintiff STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC is a domestic professional service limited liability company organized pursuant to the laws of the State of New York.  It has its principal place of business in the City and State of New York, County of Richmond.

9.      Drs. ABRAMS and PIAZZA have been partners in STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC, since the year 2000.  During the period of time of plaintiffs' allegations, Drs. ABRAMS and PIAZZA have had a number of associates who practiced as employees of STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC.

10.     Plaintiffs, JOHN DOE and MARY DOE Nos. 1 to "63" ("Patients") are patients of plaintiffs, STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC, or their associates who have been enrolled with one of defendants' health insurance individual or group plans. Their identities are confidential pursuant to a Confidentiality Stipulation and Order due to Health

3

Insurance Portability and Privacy Act ("HIPPA") regulations. Their names and policy identification numbers are filed under seal as Exhibit A to this Second Amended Complaint pursuant to the Confidentiality Stipulation and Order dated December 3, 2009 and the related Memorandum and Order dated December 8, 2009.

11.    Plaintiffs' patients have been treated by plaintiffs, STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC, Dr. ABRAMS, Dr. PIAZZA or their associates during the time alleged in this complaint.

## THE DEFENDANTS

12.  Defendants, AETNA, INC. and AETNA LIFE INSURANCE COMPANY are incorporated in Connecticut and have their principal place of business at 151 Farmington Avenue, Hartford, Connecticut 06156.

13.  AETNA HEALTH INC. is a domestic corporation duly organized and existing pursuant to the laws of the State of New York.  AETNA HEALTH INC. has its principal place of business at 333 Earle Ovington Boulevard, Suite 104 in the hamlet of Uniondale, Town of Hempstead, County of Nassau, State of New York.

14.  Upon information and belief, AETNA HEALTH INC. CORPORTATE HEALTH INSURANCE COMPANY is a domestic corporation duly organized and existing pursuant to the laws of the State of New York and having its principal place of business in the State of New York.

15.  Upon information and belief, AETNA HEALTH INSURANCE COMPANY OF NEW YORK is a domestic corporation duly organized and existing pursuant to the laws of the State of New York and having its principal place of business in the State of New York.

16. "AETNA," is a brand name used for products and services provided by one or more of the AETNA group of subsidiaries that offer, underwrite, or administrator benefits. When used in this Complaint, "AETNA" includes all AETNA subsidiaries owned and controlled by any of the named defendants whose activities are interrelated and intertwined with them. Due to the manner in which they function, all of the defendants are functional ERISA fiduciaries and, as such, they must comply with fiduciary standards. In this Complaint, "AETNA" refers to the named defendants and all predecessors, successors and subsidiaries to which these allegations pertain.

## ALLEGATIONS RELEVANT TO ALL PLAINTIFFS' CAUSES OF ACTION

17. Participating, or in-network providers ("PARS") are physicians who have signed a contract with a particular managed care entity and receive reimbursement of eligible charges directly from that entity or through third party administrators. PARS agree to provide healthcare services to plan enrollees at reduced rates in exchange for access to the plan's patient base, among other things. When visiting a PAR, plan members are only responsible for co-payments, co-insurance and payment for non-covered items, if any, at the time of service.

18. Non-participating or out-of-network providers ("Non-PARS"), by contrast, do not have a signed contract with a particular managed care entity. Non-PARS, therefore, may collect their full charges directly from patients at the time of service and are not required to accept reduced rates for procedures performed. Rather than require plan members to pay out of pocket and in full for medical services, Non-PARS may also agree to accept an assignment of benefits, which occurs when a plan member authorizes the member's health benefits plan to remit payment directly to the provider for services. Managed care entities may refuse to recognize the

patient's assignment and still remit payment to the patient.  Whether or not the health plan honors the assignment and pays the out of network benefit amount to the physician,  Non-PARS are entitled to bill the patient for the amount of the physician's charge exceeding the amount the health plan covers; a practice known as "balance billing."

19.  AETNA contractually promises its members that it will pay for services performed by Non-PARS at the lesser of the billed charge or the usual, customary and reasonable ("UCR," also known as "U&C" and "R&C') amount for the service rendered. AETNA also contractually promises its members that the UCR rate for a service is the "prevailing charge" charged by most providers of comparable services in the specific area where the member received the service, with consideration given to the nature and severity of the member's condition, as well as any complications or unusual circumstances that would require additional time, skill, or experience on the part of the Non-PAR.

20.  AETNA has engaged in a pattern and practice of denying benefits for Non-PAR services as part of its effort to increase the costs to its members of going out-of-network, thereby pressuring them to use in-network providers, subject to discounted rates and reduced services. In doing so, AETNA has breached the terms and conditions of its health care plans, which govern the benefits available for its members and their treating health care providers.

21.  As the company that issues, insures and administers the employee benefit plans through which a number of plaintiff s' patients received their insurance, AETNA is subject to ERISA and its governing regulations.  Further, due to the role AETNA played in administering the plans of each of the plaintiffs, including making coverage and benefit decisions and deciding appeals, AETNA has assumed the role as a fiduciary under ERISA toward each of the plaintiffs.

22.  By breaching the terms and conditions of its health care plans, as alleged herein, AETNA has violated its duties and obligations under ERISA.

23.  In their ordinary course of business, plaintiffs obtain assignments of benefits from their patients, as discussed in paragraph 18 above, allowing plaintiffs to be reimbursed directly by AETNA, and expect to be paid the unpaid portions of their bills by the patients through balance billing.  Further, AETNA has accepted and recognized the validity of these assignments received from AETNA subscribers through a pattern and practice of accepting them as valid and paying plaintiffs directly as Non-PAR providers. Pursuant to assignments they have received from AETNA patients, plaintiffs have standing to pursue this claim for benefits under ERISA.

24.  AETNA issues an Evidence of Coverage ("EOC" or "Certificate") to its participants and beneficiaries ("AETNA Members") that sets forth the benefits that AETNA promises to pay its members.  According to AETNA's publicly available website designed for use by AETNA members, AETNA defines a member as "a subscriber or dependent who is enrolled in and covered by a health care plan."  See www. Aetnanavigator.com (Glossary).

25.  According to its website, AETNA's Certificate represents a "legal agreement between an individual subscriber or an employer group ("Contract holder") and a health plan that describes the benefits and limitations of the coverage." *Id.*

26.  AETNA's website defines "Health Benefit Plan" as "[t]he health insurance or HMO product offered by a licensed health benefits company that is defined by the benefit contract and represents a set of covered services or expenses accessible through a provider network, if applicable, or direct access to licensed providers and facilities." *Id.*

27.  Under the relevant plans, AETNA Members have an express right to receive benefits

for services received from Non-PAR providers.  For other plans, including certain Health Maintenance Organization ("HMO") plans, AETNA Members may use Non-PAR providers in emergencies, when they are out of their home area, or when no participating provider is qualified or available to perform the medically necessary service.  When AETNA Members receive Non-PAR services, AETNA's payment is based on the lesser of the billed charge or UCR amount for that service in the geographic area in which it was performed.  AETNA uses the terms "UCR," "customary and reasonable," and "reasonable charge" interchangeably.  In addition, AETNA commits to provide benefits for all medically necessary services.

28.  AETNA is an ERISA fiduciary for the ERISA health plans at issue.  As such, AETNA owes the plaintiffs fiduciary duties of care and loyalty, and it must apply its plan provisions in good faith.

29.  Under ERISA, AETNA is required among other things, to comply with the terms and conditions of its health care plans; to accord its members an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements; and to make various disclosures to members. Such disclosures include accurately setting forth plan terms; explaining the specific reasons why a claim is denied and the internal rules and evidence that underlie such determinations; disclosing the basis for AETNA's interpretation of plan terms; and providing appropriate data and documentation concerning its coverage decisions.

30.  In offering and administering its health care plans, AETNA assumes the role of "Plan Administrator," as that term is defined under ERISA, in that it interprets and applies the plan terms, makes all coverage decisions, and provides for payment to members and/or their providers.  As the Plan Administrator, AETNA also assumes various obligations specified under

8

ERISA.  These obligations include providing its members with a "summary plan description" ("SPD"), a document designed to described in layperson's language the material terms, conditions and limitations of the health care plan.  The full details of the plan, which are summarized in the SPD, are contained in the EOC's.

31.  AETNA is obligated under ERISA to make its coverage determination in a manner consistent with the disclosures contained in the SPD.  To the extent there is a disparity or conflict between the SPD and the EOC, the SPD governs, so long as the member benefits from the application of the SPD.  If the employer, rather than AETNA, is deemed to be the Plan Administrator, AETNA remains responsible for ensuring that the SPD complies with the law under its duties as a co-fiduciary as provided in ERISA, 29 U.S.C. § 1105, even if the employer prepares or disseminates the SPD.

32.  AETNA breached its fiduciary duties by failing to disclose the reimbursement rules it uses to reduce members' benefits, and by failing to fulfill its obligations of good faith, due care and loyalty.

33.  With respect to all its health care plans, AETNA is obligated to its Members to provide specific health care benefits and reimbursements.  As detailed herein, AETNA has breached, and continues to breach, its obligations to plaintiffs and in so doing has violated ERISA.

34.  Defendants issue health insurance plans that provide benefits to its Members for certain chiropractic treatment as long as it is medically necessary.   According to its Clinical Policy Bulletins referable to chiropractic treatment:

> Chiropractic is a branch of the healing arts that is
> concerned with human health and prevention of

9

> disease, and the relationship between the neuroskeletal and musculoskeletal structures of the body. The primary focus of chiropractic is the vertebral column and the nervous system, as it relates the restoration and maintenance of health.

35.  Defendants consider chiropractic services medically necessary, subject to some plan limitations or exclusions, when the following criteria are met: (a) the member has a neuromusculoskeletal disorder; (b) the medical necessity for treatment is clearly documented; and (c) improvement is documented within the first two weeks or within 30 days after modification of treatment if there is no improvement within two weeks.

36.  Beginning in 2005, defendants began a policy of "pre-action review," in which virtually every claim submitted by plaintiffs to defendants for chiropractic services to defendants' members are initially denied, additional records are requested, and either no decision is made on the claim, the denial is affirmed, or months later only a small portion of the claim is paid.

37.  For most of the denied or disputed claims, the patient is sent questionnaires and correspondence from defendants' "Special Investigations Unit" requiring them to complete answers to lengthy interrogatories designed to impute the good reputation of the plaintiffs and insinuate disparaging remarks about them.

38.  Requests to defendants for information explaining the reasons for the adverse determinations including the clinical rationale, instructions on how to initiate standard internal and external appeals, and for clinical reports produced by peer reviewers, have been denied.

39.  When a claim is not paid or denied, defendants issue Explanation of Benefits statements ("EOBs") to its member and defendants. These EOBs rely on "boilerplate" language

10

stating either that the charges are being reviewed, additional information is being requested, AETNA has determined the charges do not meet the requirements of the members' policy, or some other, undefined reason.

40.  Appeals of the defendant's denials are futile, since the internal appeal process does not result in a fair or reasonable review of the services and charges, and the defendants do not provide adequate information concerning the external appeal process. The defendants do not provide the specific reasons for the adverse determinations, instructions concerning the external appeal process, or peer review reports.

41.  As the result of defendants' actions, the number of plaintiffs' patients who are members of the defendants has steadily declined since defendants initiated the policy of denying all claims. In 2004, plaintiffs had more than 700 patient visits by defendant's members. The number decreased to 378 in 2006, 239 in 2007, and 100 in 2008.

42.  The decrease in the number of defendant's members treated by plaintiffs caused a significant loss of revenue and income. Plaintiffs billed defendants more than $100,000.00 in 2004. In 2008 that amount decreased to just more than $10,000.00. In addition, due to defendant's practice of denying all submitted claims, plaintiffs have had to expend numerous hours and resources seeking reimbursement, providing unnecessary documentation, and disputing denials and requests for patient information and documentation.

**FIRST CAUSE OF ACTION**

FAILURE TO PROVIDE ACCURATE PLAN DOCUMENTS
IN VIOLATION OF 29 U.S.C. § 1022

43.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1 through 42 above, with the same force and effect as if set forth at length.

44.  The plaintiffs have standing to pursue these claims on behalf of their patients, AETNA members, through associational standing and as beneficiaries of an ERISA plan as that term is defined by ERISA.

45.  Under ERISA, defendants are required to provide plaintiffs certain protections including the provision of accurate plan materials, and compliance by AETNA with ERISA claims procedure regulations under § 102 of ERISA, 29 U.S.C. § 1022.

46.  SPDs are required to be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022.

47.  Applicable federal claims procedure regulations set forth minimum standards for claim procedures, appeals, notice to members and the like.  By engaging in the conduct described herein, AETNA failed to comply with such regulations.

48.   The consequences of AETNA's failure to comply with the regulations  are that AETNA failed to provide reasonable claims procedures and failed to make required disclosures to plaintiffs.

49.  Although defendants were obligated to do so, plaintiffs were not reasonably apprised of their rights with respect to the respective ERISA regulated plans.

50.  More specifically, AETNA systematically made Non-Par benefit reductions that were inconsistent with the provisions of ERISA, in that AETNA initially denied all claims submitted by plaintiffs, placed plaintiffs claims into pre-payment review, sent onerous and unnecessary questionnaires from their "Special Investigations Unit" to unsuspecting patients,

provided improper notice of the right to review of denied claims, made appeals of valid claims futile, and ultimately failed to pay valid claims.

51. Additionally, AETNA made benefit determinations for Non-Par claims that are inconsistent with the terms of group health plans, and failed to disclose information concerning the data and/or methodology it used to determine UCR or other Non-Par reimbursements.

52. AETNA also breached its fiduciary duties by sending noncompliant EOBs and other communications to plaintiffs.

53. These practices, along with AETNA's lack of disclosure of these practices to its members, violated its legal obligation to provide accurate plan documents under 29 U.S.C. § 1022.

54. As the result of this cause of action, plaintiffs seek unpaid benefits, coinsurance amounts and interest back to the date their claims were originally submitted to AETNA. Plaintiffs request attorneys' fees, costs, prejudgment interest and other appropriate relief against AETNA pursuant to 29 U.S.C. § 1132(g).

## SECOND CAUSE OF ACTION

### FAILURE TO ACT IN ACCORDANCE WITH PLAN DOCUMENTS IN VIOLATION OF 29 U.S.C. § 1104(a)(1)(D)

55. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1 through 54 above, with the same force and effect as if set forth at length.

56. The plaintiffs have standing to pursue these claims on behalf of their patients, AETNA members, through associational standing and as beneficiaries of an ERISA plan as that term is defined by ERISA.

57. During the all times relevant to this suit, AETNA acted as a "fiduciary" to plaintiffs

13

as such term is defined under 29 U.S.C. § 1002(21)(A).

58.  Under ERISA, defendants are charged with a fiduciary duty to "act in accordance with the documents and instruments governing the plan" in carrying out its role of administering the ERISA governed plan. 29 U.S.C. § 1104(a)(1)(D).

59.  AETNA must pay benefits to AETNA members that are insured by, funded by or administered by AETNA pursuant to the terms of their ERISA plans.

60.  Although AETNA was obligated to do so according to its plan terms, it failed to comply with its own plan documents by, *inter alia*, unreasonably denying plaintiffs' claim submissions for treatment by Non-Par providers.

61.  AETNA violated its statutory obligations each time it engaged in conduct that discouraged or penalized its members' use of Non-Par providers, such as by unreasonably denying plaintiffs' claim submissions.

62.  AETNA violated its legal obligations under ERISA and federal common law each time it made the Non-Par benefit reductions described in this complaint.

63.  AETNA further violated its obligations under ERISA by systematically making Non-Par benefit reductions that were inconsistent with the provisions of ERISA, in that AETNA initially denied all claims submitted by plaintiffs, placed plaintiffs claims into pre-payment review, sent onerous and unnecessary questionnaires from their "Special Investigations Unit" to unsuspecting patients, provided improper notice of the right to review of denied claims, made appeals of valid claims futile, and ultimately failed to pay valid claims.

64.  As the result of this cause of action, plaintiffs seek unpaid benefits, coinsurance amounts and interest back to the date their claims were originally submitted to AETNA.

Plaintiffs request attorneys' fees, costs, prejudgment interest and other appropriate relief against AETNA pursuant to 29 U.S.C. § 1132(g).  Plaintiffs also seek, in their Fifth Cause of Action below, declaratory and injunctive relief related to enforcement of the plan terms, and to clarify rights to future benefits or reimbursements pursuant to 29 U.S.C. § 1132(a)(3).

## THIRD CAUSE OF ACTION

### VIOLATING THE FIDUCIARY DUTY OF CARE IMPOSED 29 U.S.C. § 1104(a)(1)(B)

65.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1 through 64 above, with the same force and effect as if set forth at length.

66.   The plaintiffs have standing to pursue these claims on behalf of their patients, AETNA members, through associational standing and as beneficiaries of an ERISA plan as that term is defined by ERISA.

67.   During the all times relevant to this suit, AETNA acted as a "fiduciary" to plaintiffs as such term is defined under 29 U.S.C. § 1002(21)(A).

68.   Under ERISA, AETNA is charged with a fiduciary duty of care in carrying out its role of administering the ERISA governed plan.  That duty entails acting "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

69.   Defendants violated their duty of care by, *inter alia*, continuously and arbitrarily denying plaintiffs' claims; providing boilerplate explanations, if any at all, for claim denial; failing to provide plaintiffs with the information necessary to follow up on denied claims; and not following up on plaintiffs' inquiries as to the proper channels for review of denied claims.

70.  In failing to act with care, prudence and diligence in responding to plaintiffs' claims, AETNA violated its fiduciary duty of care.

71.  As the result of defendants' conduct alleged by this cause of action, plaintiffs seek unpaid benefits, coinsurance amounts and interest back to the date their claims were originally submitted to AETNA.  Plaintiffs request attorneys' fees, costs, prejudgment interest and other appropriate relief against AETNA pursuant to 29 U.S.C. § 1132(g).  Plaintiffs also seek removal of AETNA as a breaching fiduciary, and, in their Sixth Cause of Action below, declaratory and injunctive relief related to enforcement of the plan terms, and to clarify rights to future benefits or reimbursements pursuant to 29 U.S.C. § 1132(a)(3).

## FOURTH CAUSE OF ACTION

### VIOLATING THE FIDUCIARY DUTY OF LOYALTY IMPOSED BY 29 U.S.C. § 1104(1)(A)

72.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1 through 71 above, with the same force and effect as if set forth at length.

73.  The plaintiffs have standing to pursue these claims on behalf of their patients, AETNA members, through associational standing and as beneficiaries of an ERISA plan as that term is defined by ERISA.

74.  During the all times relevant to this suit, AETNA acted as a "fiduciary" to plaintiffs as such term is defined under 29 U.S.C. § 1002(21)(A).

75.  Under ERISA, AETNA is charged with a fiduciary duty of loyalty in carrying out its role of administering the ERISA governed plan.  That duty entails "discharg[ing] his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries."  29 U.S.C. §

16

1104(a)(1)(A)(i).  Moreover, a fiduciary must avoid self dealing or financial arrangements that benefit it at the expense of its members.  29 U.S.C. § 1106.  AETNA cannot, for example, make benefit determinations for the purpose of saving money at the expense of its members.

76.  Defendants violated their fiduciary duty of loyalty by, *inter alia*, continuously and arbitrarily denying plaintiffs' claims; providing boilerplate explanations, if any at all, for claim denial; failing to provide plaintiffs with the information necessary to follow up on denied claims; and not following up on plaintiffs' inquiries as to the proper channels for review of denied claims.

77.  The unlawful and unjustified practices described above seemingly have no explanation but to save defendants' money at the expense of plan members and beneficiaries in direct contravention of defendants' fiduciary duty of loyalty.

78.  As the result of defendants' conduct alleged by this cause of action, plaintiffs seek unpaid benefits, coinsurance amounts and interest back to the date their claims were originally submitted to AETNA.  Plaintiffs request attorneys' fees, costs, prejudgment interest and other appropriate relief against AETNA pursuant to 29 U.S.C. § 1132(g).  Plaintiffs also seek removal of AETNA as a breaching fiduciary, and, in their Sixth Cause of Action below, declaratory and injunctive relief related to enforcement of the plan terms, and to clarify rights to future benefits or reimbursements pursuant to 29 U.S.C. § 1132(a)(3).

## FIFTH CAUSE OF ACTION

### FAILURE TO PROVIDE PLAINTIFFS WITH A REASONABLE OPPORTUNITY FOR FULL AND FAIR REVIEW OF DENIED CLAIMS IN VIOLATION OF 29 U.S.C. § 1133(2)

79.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1 through 78 above, with the same force and effect as if set forth at length.

80.   The plaintiffs have standing to pursue these claims on behalf of their patients, defendants' members, through associational standing and as beneficiaries of an ERISA plan as that term is defined by ERISA.

81.   Under ERISA, defendants are required to provide plaintiffs with certain protections, including a reasonable opportunity for a full and fair review of all claims denied by AETNA.  29 U.S.C. § 1133(2).

82.   Although AETNA was obligated to do so, it failed to provide a "full and fair review" of denied claims pursuant to § 503 of ERISA, 29 U.S.C. § 1133 and its implementing regulations by, *inter alia*, failing to disclose the "specific reasons" for benefit denials, failing to disclose data and/or the methodology used to determine UCR or Non-Par reimbursement and failing to comply with appeal procedures imposed by ERISA and the federal common law.

83.   Every time AETNA deprived its members of "full and fair review" or proper compliance with ERISA claims procedure regulations, it violated § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).   Moreover, AETNA's failure to disclose material information about its denial of claims constitutes a violation of federal common law, which obligates fiduciaries such as AETNA to provide this material information to its members and beneficiaries.

84.   Administrative remedies are deemed exhausted because of, *inter alia*, the invalid policy of across the board denials of plaintiffs' claims and AETNA's failure to provide reasonable claims procedures.  By virtue of the conduct alleged in this complaint, any appeal would have been futile.

85.   As the result of defendants' conduct alleged by this cause of action, plaintiffs seek unpaid benefits, coinsurance amounts and interest back to the date their claims were originally

18

submitted to AETNA.  Plaintiffs request attorneys' fees, costs, prejudgment interest and other appropriate relief against AETNA pursuant to 29 U.S.C. § 1132(g).  Plaintiffs also seek removal of AETNA as a breaching fiduciary, and, in their Sixth Cause of Action below, declaratory and injunctive relief related to enforcement of the plan terms, and to clarify rights to future benefits or reimbursements pursuant to 29 U.S.C. § 1132(a)(3).

## SIXTH CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF FOR THE COLLECTIVE ERISA VIOLATIONS PURSUANT TO 29 U.S.C. § 1132(a)(3)

86.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1 through 85 above, with the same force and effect as if set forth at length.

87.    The plaintiffs have standing to pursue these claims on behalf of their patients, AETNA members, through associational standing and as beneficiaries of an ERISA plan as that term is defined by ERISA.

88.    Under ERISA, plaintiffs are entitled to assert a claim for equitable relief for AETNA's violation of its fiduciary duties under 29 U.S.C. § 1132(a)(3), including injunctive and declaratory relief, and its removal as a breaching fiduciary.

89.    By virtue of its breach of its fiduciary duties: (a) to act in accordance with the documents and instruments governing its plan, (b) of care, and (c) loyalty alleged in the second, third and fourth counts alleged herein, plaintiffs have made out claims of defendants' breach of fiduciary duties under 29 U.S.C. § 1104.

90.    Plaintiffs are therefore entitled to declaratory and injunctive relief related to enforcement of the plan terms, and to clarify rights to future benefits or reimbursements pursuant to 29 U.S.C. § 1132(a)(3).

## SEVENTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

91.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1 through 90 above, with the same force and effect as if set forth at length.

92.  Plaintiffs, STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC, DR. ABRAMS and DR. Piazza have been established in their profession for more than twenty years in Staten Island, New York.  They have developed a patient base of thousands of past and present patients, and many physicians in the community who are the sources of referrals that they rely on for the development and continuation of their practice.

93.   As the result of defendants' illegal, bad faith and egregious conduct, defendants have interfered with plaintiffs, STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC, DR. ABRAMS and DR. PIAZZAS' ability to treat and establish business relations with these patients and other sources of referrals.  Defendants' tortious conduct which is directed at plaintiffs' patients has caused injury and financial damages to the plaintiffs.

94.  Plaintiffs seek recovery of unpaid benefits, coinsurance amounts and interest back to the date their claims were originally submitted to AETNA, along with direct and consequential damages for their past, present and future damage to their business caused by defendants' acts in violation of ERISA and common law.

**WHEREFORE**, plaintiffs demand judgment in their favor against the defendants on the first through sixth causes of action: ERISA violations, and on the seventh cause of action: tortious interference with business relations, in amounts that exceed the jurisdictional limits of all lower courts.

Dated: Staten Island, New York
      December 18, 2009

           Yours etc.,

           TRACY & STILWELL, P.C.

           By: _____
           JOHN J. TRACY
           Attorneys for Plaintiffs
           STATEN ISLAND CHIROPRACTIC ASSOCIATES,
           PLLC,
           DAVID C. ABRAMS, D.C. and JOHN P. PIAZZA, D.C.
           1688 Victory Boulevard
           Staten Island, New York 10314
           Telephone No.: (718) 720-7000

# EXHIBIT A

CONFIDENTIAL

Exhibit A contains the names and policy identification numbers of JOHN "DOE" and MARY

"DOE", Nos. 1 to 63.  Exhibit A is designated confidential and filed under seal pursuant to a

Stipulation and Order entered in this action and signed by The Honorable Victor V. Pohorelsky,

United States Magistrate Judge, on December 8, 2009.

Index No.:   2276/09        Year:  2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC,
DAVID C. ABRAMS, D.C. and JOHN P. PIAZZA, D.C. and
STATEN ISLAND CHIROPRACTIC ASSOCIATES as
Assignee of JOHN DOE and MARY "DOE", Nos. 1 to 63,

                    Plaintiffs,

     -against-

AETNA, INC., and AETNA LIFE INSURANCE COMPANY,

                    Defendants.

# SECOND AMENDED COMPLAINT

TRACY & STILWELL, P.C.
Attorneys for Plaintiffs
STATEN ISLAND CHIROPRACTIC ASSOCIATES, PLLC,
DAVID C. ABRAMS, D.C. and JOHN P. PIAZZA, D.C.
and STATEN ISLAND CHIROPRACTIC ASSOCIATES as
Assignee of JOHN DOE and MARY "DOE", Nos. 1 to 63
*Office and Post Office Address and Telephone No.*
1688 VICTORY BOULEVARD
STATEN ISLAND, NEW YORK 10314
Telephone No.:  (718) 720-7000
Facsimile No.:  (718) 442-0552
Email:jtracy@tracyandstilwell.com