UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
STATEN ISLAND CHIROPRACTIC ASSOCIATES,
PLLC, DAVID C. ABRAMS, D.C., and JOHN P. PIAZZA,
D.C., and STATEN ISLAND CHIROPRACTIC
ASSOCIATES as Assignee of JOHN "DOE" and MARY
"DOE", Nos. 1-63,

     Plaintiffs,          <u>NOT FOR PUBLICATION</u>
-v-                  MEMORANDUM & ORDER
                  09-CV-2276 (CBA) (VP)
AETNA, INC.; AETNA LIFE INSURANCE CO.,
AETNA HEALTH INSURANCE COMPANY OF NEW
YORK, AETNA HEALTH INC., CORPORATE HEALTH
INSURANCE COMPANY, and AETNA HEALTH INC.,

     Defendants.
-------------------------------------------------------------------x
AMON, United States District Judge:

   The plaintiffs in this action are two chiropractors and their professional corporation, who

have received claims assignments from 63 of their patients under the patients' non-party,

employer-sponsored health plans. The plaintiffs have brought suit against Aetna, Inc. and

several wholly owned subsidiaries (collectively "the defendants"), alleging various violations of

the Employee Retirement Income Security Act of 1974 ("ERISA") and tortious interference with

business relations, arising primarily out of the defendants' alleged refusal to pay the benefits

claims that the plaintiffs have submitted to them. The defendants now move to dismiss the

complaint in full. For the reasons stated below, the motion to dismiss is granted, although the

ERISA claims for benefits and for "full and fair review" are dismissed without prejudice.

## I.  BACKGROUND

   The following facts are alleged in the Second Amended Complaint ("Compl.").

   Certain health care providers enter into contracts with health insurance companies or

managed care organizations to become in-network or "participating" providers ("PARS"). As a

member of the insurer's network, these PARS agree to provide services to the insurer's enrollees

at a reduced rate in exchange for, inter alia, access to the insurer's patient base.  Enrollees who visit PARS are required to pay only the applicable co-payment or co-insurance under their benefits plan, plus any fees for non-covered services.  By contrast, out-of-network or "non-participating" providers ("Non-PARS") do not have a contract with the particular insurer.  Non-PARS may require their patients to pay the full service charge up front, after which the patients can submit for reimbursement from their benefits plan, subject to the terms of coverage for Non-PAR services.  Alternatively, Non-PARS may agree to accept an assignment of benefits from the patient, which allows the Non-PAR provider to submit requests for payment directly from the plan or its insurer on the patient's behalf.  The Non-PAR provider may then be entitled to bill the patient for any amount exceeding what the benefits plan will cover.

The plaintiff chiropractors in this case are Non-PARS for the health plans at issue, and have this latter benefits-assignment arrangement with their patients.  Thus, they have received claims assignments from 63 of their patients who are members of employer-sponsored health plans insured or serviced by the defendants, and have submitted these claims directly to the defendants for payment for the chiropractic services rendered.  Although the parties dispute the exact role that the defendants played in these health plans, the defendants appear to concede at this stage that the patient-assignors are members of plans governed by ERISA, and that one of the defendants insures or services these plans in some manner.  The defendants also do not appear to contest the validity of the assignments, or that the plaintiffs have standing to bring suit under ERISA to collect benefits that they were assigned.

The plaintiffs allege that under the terms of the plans at issue, the defendants agree to pay for services performed by Non-PARS at the lesser of the billed charge or the so-called "usual, customary and reasonable" ("UCR") rate, which is essentially the market rate for comparable services in a particular area.  (Compl. ¶ 19.)  The plaintiffs claim that chiropractic services are

covered when they are "medically necessary," which means that three criteria are met, "subject to some plan limitations or exclusions":  the member has a neuromusculoskeletal disorder, the medical necessity for the treatment has been clearly documented, and improvement is shown within a certain amount of time after starting treatment.  (Compl. ¶ 35.)

The complaint does not specify the precise role that any of the defendants play in the health plans at issue, which are never identified by name, and it does not cite to or incorporate the specific terms of any plan documents.  Rather, the plaintiffs allege generally that "[i]n offering and administering its health care plans, AETNA assumes the role of 'Plan Administrator,' as that term is defined under ERISA, in that it interprets and applies the plan terms, makes all coverage decisions, and provides for payment to members and/or their providers."  (Compl. ¶ 30.)

The plaintiffs claim that the defendants have "engaged in a pattern and practice of denying benefits for Non-PAR services as part of [their] effort to increase the costs to [their] members of going out-of-network, thereby pressuring them to use in-network providers, subject to discounted rates and reduced services."  (Compl. ¶ 20.)  The plaintiffs attribute most of the defendants' actions to their alleged "policy of 'pre-action review,' in which virtually every claim submitted by plaintiffs to defendants for chiropractic services to defendants' members [is] initially denied, additional records are requested, and either no decision is made on the claim, the denial is affirmed, or months later only a small portion of the claim is paid."  (Compl. ¶ 36.)  The plaintiffs claim that as part of this "pre-action review" procedure, the defendants sent questionnaires to the patients "requiring them to complete answers to lengthy interrogatories" about the treatment they received. (Compl. ¶ 37.)  The plaintiffs also allege that these questionnaires were "designed to impute the good reputation of the plaintiffs and insinuate disparaging remarks about them.  (Id.)

The upshot, the plaintiffs contend, is that the defendants have improperly denied valid claims for benefits, have breached the terms of the relevant health plans, and have thereby also violated various provisions of ERISA.  The plaintiffs also allege that in processing the claims for benefits, the defendants followed improper procedures and provided inadequate disclosures, such as by failing to explain the reason for adverse determinations and failing to include information about how to appeal benefits denials.  (Compl. ¶¶ 38, 39.)  The plaintiffs submit that "appeals of the defendant's denials are futile, since the internal appeal process does not result in a fair or reasonable review of the services and charges, and the defendants do not provide adequate information concerning the external appeal process."  (Compl. ¶ 40.)

As a result of the defendants' actions, the plaintiffs claim that they have been steadily losing patients who participate in the defendants' health plans and have expended many additional resources on disputing the benefits denials, causing "significant loss of revenue and income."  (Compl. ¶ 42.)  The plaintiffs also allege that the defendants' actions have interfered with their ability to "establish business relations with . . . patients and other sources of referrals." (Compl. ¶ 93.)

Although the plaintiffs' precise causes of action are at times difficult to discern, they are asserting various claims for unpaid benefits and equitable relief under ERISA, plus a claim for tortious interference with business relations under New York state law.


## II.     STANDARD OF REVIEW

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint that contains only "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Neither will a complaint that contains only "naked assertion[s]" without "further factual enhancement." Id. at 557.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint. 129 S. Ct. at 1950. First, courts can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Second, they can then identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A court's consideration on a motion to dismiss is "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

### III.   DISCUSSION

#### A.   ERISA Claims

> ##### i.   *Claims for Benefits under 29 U.S.C. § 1132(a)(1)(B)*

All five of the plaintiffs' ERISA claims appear to be pursuing "unpaid benefits" as the primary form of relief, although nowhere in the complaint do the plaintiffs cite to the relevant ERISA provision for the recovery of benefits, 29 U.S.C. § 1132(a)(1)(B).  (See Compl. ¶¶ 54, 64, 71, 78, 85.)  However, plaintiffs have stated clearly in their opposition brief that "one . . . of the claims for relief plaintiffs seek is essentially section 1132(a)(1)(B) claims for plan benefits, that is, payment for services already rendered to the Patient members by the Chiropractors." (Pls. Opp. at 6.)  Moreover, the defendants themselves concede that "the essence of plaintiffs' [ERISA] claims . . . is the recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B) . . . ." (Defs. Mem. 14.)  For the reasons that follow, to the extent that any or all of the plaintiffs' claims for "unpaid benefits" are brought under § 1132(a)(1)(B), they are dismissed.

Under 29 U.S.C. § 1132(a)(1)(B), "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The statute also expressly provides that an action may be brought against an "employee benefit plan . . . as an entity," and that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity."  Id. at § 1132(d); see Chapman v. Choicecare Long Island Disability Plan, 288 F.3d 506, 509-10 (2d Cir. 2002). The Second Circuit has repeatedly stated that "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable."  Id. at 509; Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir.1989) (citing 29 U.S.C. § 1132(d)(2)); see also Crocco v. Xerox Corp., 137 F.3d 105, 107-08 (2d Cir. 1998) (only the plan,

"the designated Plan administrator" or "a Plan trustee" can be liable for benefits due under §

1132(a)(1)(B)).  Under ERISA, the plan "administrator" is a term of art, referring to "the person

specifically so designated by the terms of the instrument under which the plan is operated," or "if

an administrator is not so designated, the plan sponsor."   29 U.S.C. § 1002(16)(A).

Here, none of the plans at issue are named as defendants, and the plaintiffs have not

argued that any of the defendants is a plan trustee.   Further, the complaint does not appear to

allege that any of the defendants are specifically named as the plan administrator in any of the

plan instruments themselves, and the plaintiffs have not appended to the complaint any plan

documents to that effect.  Rather, the complaint vaguely asserts that "AETNA assumes the role

of 'Plan Administrator,' as that term is defined under ERISA, in that it interprets and applies the

plan terms, makes all coverage decisions, and provides for payment to members and/or their

providers."  (Compl. ¶ 30.)  At oral argument, where defense counsel argued repeatedly that the

defendants are not the named plan administrator, the plaintiffs indicated that they were not

bringing a claim based on the plan documents' formal designation, but rather were asserting that

it is immaterial "what they call themselves" because "as the company with the discretion to

review and decide and ultimately pay the claims" the defendants meet a more substantive

definition of plan administrator.  (Transcript of Oral Argument, July 26, 2011, at 14:20-18:11.)

The plaintiffs' opposition brief draws upon case law reflecting "that there is some disagreement

among courts in this circuit regarding the proper parties to a recovery of benefits claim under

ERISA."  Schnur v. CTC Comm'ns Corp., 621 F. Supp. 2d 96, 109 (S.D.N.Y. 2008) (internal

quotation marks omitted).

One line of authority indicates that only the named plan administrator, the plan itself, or

the plan trustees may be sued for benefits under § 1132(a)(1)(B).  In Lee v. Burkhart, 991 F.2d

1004 (2d Cir. 1992), the Second Circuit held that an insurance company could not be liable under

§ 1132(a)(1)(B) for failing to provide participants with accurate plan descriptions because it was not named as the plan "administrator" under § 1002(16)(A), and thus did not incur the duty to provide plan descriptions to participants.[1]  Id. at 1010-11.  In a footnote, the court expressly noted its disagreement with the 1st and 11th Circuits, which had held "that under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description."  Id. at 1010 n. 5.  The Lee court also observed that one "potential impediment" to the plaintiffs' claims was that "ERISA permits suits to recover benefits only against the Plan as an entity."  Id. at 1009 (internal quotation marks omitted).

Later, in Crocco, the Second Circuit addressed whether an employer could be liable in an ERISA suit for the recovery of benefits where the employer, while not named as the "administrator" by the plan, had "control, indirectly, over the administration of the plan" and thus was a sort of "de facto co-administrator."  137 F.3d at 107.   The court answered this question in the negative, holding that "the reasoning—if not necessarily the holding—of Lee precludes employer liability, as a de facto co-administrator, in a suit brought under [§ 1132(a)(1)(B)], where the employer has designated a plan administrator in accordance with 29 U.S.C. § 1002(16)(A)."  137 F.3d at 107.

In light of this Second Circuit guidance, several district courts have effectively applied a bright-line rule that only the specifically designated "plan administrator"—or the plan itself or its trustees—can be liable in an ERISA suit for benefits.  For example, in Schnur, the court held that an insurance company could not be liable in an ERISA benefits claim, even though it "apparently exercised some discretion and authority in making benefits determinations," because it was not the designated plan administrator.  621 F. Supp. 2d at 106-07.  In Del Greco v. CVS Corp., 354 F. Supp. 2d 381 (S.D.N.Y. 2005), the court noted that "[a]n entity that provides services to a plan

---

[1] The duty to provide summary plan descriptions is likewise placed only on the plan's "administrator" as defined in 29 U.S.C. § 1002(16)(A).  See 29 U.S.C. §§ 1021, 1024; Lee, 991 F.2d at 1010.

does not become a <u>de facto</u> plan administrator liable under ERISA," and held that "[s]ince [the defendant] was not the named plan administrator, [it] could not be sued for denial of benefits." <u>Id.</u> at 384; <u>see also</u> <u>Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America</u>, 639 F. Supp. 2d 371, 380 (S.D.N.Y. 2009); <u>Stevenson v. Tyco Int'l (US) Inc. Supplemental Executive Retirement Plan</u>, 2006 WL 2827635, at *4 (S.D.N.Y. 2006).

Several decisions in this circuit, however, have held that a claim for benefits may survive a motion to dismiss where the complaint alleges that an insurer "actually controlled the distribution of funds and decided whether or not to grant benefits," even where that insurer was not the named plan administrator.  <u>American Medical Assoc. v. United Healthcare Corp.</u>, 2002 WL 31413668, *6 (S.D.N.Y.2002); <u>see also</u> <u>Sheehan v. Met. Life Ins. Co</u>2002 WL 1424592, at *2 (S.D.N.Y. June 28, 2002); <u>Cole v. Aetna Life & Cas.</u>, 70 F. Supp. 2d 106, 115 (D. Conn. 1999).

This Court finds more persuasive the view of the court in <u>Schnur</u>.  That court observed that it had "considered these authorities and finds that the better view, consistent with the language of the statute, is that an insurer to an ERISA plan is generally not a proper defendant in a recovery of benefits claim unless it meets the statutory definition of 'administrator' under the Act." <u>Schnur</u>, 621 F. Supp. 2d at 109.  The Second Circuit has asserted that liability for the recovery of benefits extends only to the plan and to "administrators and trustees of the plan in their capacity as such," <u>Chapman</u>, 288 F.3d at 509, and <u>Crocco</u> appears clear enough in its conclusion that liability for benefits extends only to those "plan administrators" who meet the technical definition of 29 U.S.C. §1002(16)(A).  Although the Second Circuit may one day wish to revisit the limitations it has placed on the proper defendants to § 1132(a)(1)(B) benefits claims, <u>see</u> <u>Cyr v. Reliance Standard Life Ins. Co.</u>, 642 F.3d 1202 (9th Cir. 2011) (en banc)

9

(reversing prior precedent and holding that § 1132(a)(1)(B) liability extends to non-administrator insurance company), that task is not properly before this Court.

The Court is also mindful that in much of the case law supporting its analysis the designated plan administrator was identified, which is not the case here.  See, e.g., Crocco, 137 F.3d at 106, 107-08; Schnur 621 F. Supp. 2d at 106; Del Greco, 354 F. Supp. 2d at 384.  However, it is sufficiently clear from the wording of the Complaint, the plaintiffs' opposition brief, and the statements made during oral argument that the plaintiffs are not asserting that discovery of plan documents would reflect that the defendants meet the ERISA definition of "plan administrator" to which the Court is adhering.  The plaintiffs also have not requested leave to amend their complaint so as to clearly allege that one or more of the defendants meet that definition.  Rather, the plaintiffs are urging this Court to adopt a different definition of "plan administrator" that lies outside §1002(16)(A).

The Court declines to do so.   Dismissal of these claims is therefore appropriate on the grounds that a benefits claim under § 1132(a)(1)(B) against a so-called "plan administrator" must, at a minimum, offer factual allegations that the defendant meets the particular definition of that term under ERISA's statutory standards as outlined above.

Given the somewhat unusual posture of this case, however, in which none of the relevant plan documents have been placed before the Court, a dismissal without prejudice is appropriate on these claims.[2]  Although the plaintiffs may have effectively conceded that they do not believe the plan documents name any of the defendants as the "administrator," it is somewhat unclear

---

[2] In support of their motion, the defendants have submitted an example agreement between one of the defendants and one of the assignor's employers which specifically states that the employer remains the sponsor and administrator of the self-funded plan at issue.  (See Domurad Aff., Ex. B).  Since the plaintiffs have not expressly relied on the terms of this agreement in the complaint—indeed, the plaintiffs' argument has been that the terms formally designating the "plan administrator" do not matter—the Court is not certain that it could properly consider this document as "integral" to the complaint on a 12(b)(6) motion, and that issue has not been adequately briefed. Cf. Int'l Audiotext Network Inc. v. AT&T, 62 F.3d 69, 71-72 (2d Cir. 1995); Canal+ Image UK Ltd. v. Lutvak, 773 F. Supp. 2d 419, 427 (S.D.N.Y. 2011).  Regardless, as the plaintiffs have not properly pled that the defendants are the named plan administrator, the Court need not consider this document.

why the defendants did not simply submit evidence containing the identity of the relevant plan administrators and move for summary judgment.  Thus, in an abundance of caution and in light of many benefits claims underlying the complaint, the Court dismisses the claims for benefits under § 1132(a)(1)(B) without prejudice.[3]

Since dismissal of the benefits claims is without prejudice, the Court will address the defendants' other proposed grounds for dismissal.  The defendants argue that, even setting aside the issue of the proper definition of "plan administrator," the plaintiffs' claims cannot survive Iqbal/Twombly review because "the benefits claims suffer from complete lack of specificity as to the terms of the plan applicable to even one of the 63 assignors; the nature of the chiropractic services that were rendered; and whether such services were covered under the terms of the particular participant's plan."  (Defs. Reply Mem. at 6.)

Although the complaint here is no model of clarity, and the plaintiffs seemingly could have provided some detail regarding the types of services rendered and how those services fell within the plans' terms of coverage, the complaint does appear to allege that the relevant benefits plans provide coverage of chiropractic services rendered by Non-PARS at the UCR rate when "medically necessary," meaning "(a) the member has a neuromusculoskeletal disorder; (b) the medical necessity for treatment is clearly documented; and (c) improvement is documented within the first two weeks or within 30 days after modification of treatment is there is no improvement within two weeks."  (Compl. ¶ 35.)  The plaintiffs also allege that defendants have "unreasonably den[ied] plaintiffs' claim submissions" and "failed to pay valid claims."  (Compl. ¶¶ 50, 60.)  The complaint can be read to allege that the plaintiffs have submitted claims for chiropractic treatment that met the coverage criteria of the plans at issue, and those claims were improperly denied.  Further, the plaintiffs have appended to the complaint the names and policy

---

[3] Neither the parties nor the Court address whether, in a properly pleaded claim for benefits, the plaintiffs would also be entitled to "coinsurance amounts and interest back to the date their claims were originally submitted."  (Compl. ¶ 54.)

numbers of their patient-assignors, which would make it perfectly easy for the defendants to ascertain the claims history and plan coverage for each patient from their internal records.

The Court is mindful that a plaintiff should not be able to force a defendant into a fishing expedition of costly discovery involving multitudes of claims and beneficiaries on the basis of a poorly pleaded and confusing complaint.  However, the law does not require that an ERISA plaintiff append voluminous materials to their complaint simply to state a valid claim.  The Court would not be inclined to dismiss these claims simply because the complaint does not allege sufficient facts regarding whether the services offered to these patients were covered by the terms of the plans.  Such a matter would be better left for summary judgment.

The defendants also argue that the plaintiffs have not adequately alleged that they have exhausted their administrative remedies.  "[T]he federal courts--including this Circuit--have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'"  Paese v. Hartford Life and Accident Ins. Co., 449 F.3d 435, 443 (2d Cir. 2006) (quoting Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993)).  However, "[d]efendants who give inadequate notice of the right to administratively appeal a denial of benefits are thus precluded from . . . asserting failure to exhaust administrative remedies as a defense."  Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318, 324 (2d Cir. 2004).  Here, the complaint alleges, for example, that "[r]equests to defendants for . . . instructions on how to initiate standard internal and external appeals . . . have been denied."  (Compl. ¶ 38.)  The Court believes that this allegation is sufficient to survive a motion to dismiss on exhaustion grounds.

In sum, the Court will dismiss the benefits claims without prejudice on the grounds that they are not properly brought against "the plan [or] the administrators [or] trustees of the plan in

their capacity as such." Leonelli, 887 at 1199.  The Court will now turn to the remaining claims that can be construed as something other than a claim for benefits under § 1132(a)(1)(B).

### ii.   "Summary Plan Description" Claim

The first cause of action asserts a claim for failing to "provide accurate plan documents in violation of 29 U.S.C. § 1022."  (Compl. Header Preceding ¶ 43.)  Defendants argue that the plaintiffs withdrew any claim relating to SPDs at a May 28, 2010 conference before Magistrate Judge Pohorelsky, where plaintiffs' counsel stated: "I have no problem saying at this point we have no problem with the summary plan description because we're not making that claim in the complaint."  (Transcript of Status Conference before Magistrate Judge Pohorelsky, May 28, 2010, at 20:14-16.)  In the plaintiffs' opposition, they acknowledge that "plaintiffs have withdrawn that part of the First Cause of Action referring to the summary plan descriptions set forth in 29 U.S.C. § 1022."  (Pls. Opp. 6.)

Accordingly, any other claim with respect to the SPDs is deemed withdrawn.

### iii.   Breaches of Fiduciary Duty

The plaintiffs' second, third, fourth, and sixth causes of action allege breaches of fiduciary duty under ERISA, specifically, "failure to act in accordance with plan documents in violation of 29 U.S.C. § 1104(a)(1)(D)," "violating the fiduciary duty of care imposed [by] 29 U.S.C. § 1104(a)(1)(B)," and "violating the fiduciary duty of loyalty imposed by 29 U.S.C. § [1104(a)(1)]."  (Compl. ¶¶ 55-78.)  The plaintiffs claim that as a result of these alleged breaches, they are entitled to "unpaid benefits," as well as "declaratory and injunctive relief" and "removal of AETNA as a breaching fiduciary."  (Compl. ¶¶ 64, 71, 78, 88.)

Under ERISA, "a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or

discretionary responsibility in the administration' of the plan." Varity Corp. v. Howe, 516 U.S. 489, 498 (1996) (quoting 29 U.S.C. § 1002(21)(A)).  An ERISA fiduciary has a duty of loyalty, which requires that he "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). An ERISA fiduciary also has a duty of prudence, which requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  ERISA fiduciaries must also act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" various ERISA provisions. 29 U.S.C. § 1104(a)(1)(D).  The defendants conceded at oral argument that "[i]n certain respects, they are a fiduciary" under the plans they service.  (Transcript of Oral Argument, at 18:21-22.)  The defendants make a persuasive argument that these plaintiffs have not properly stated a claim for relief under ERISA.

The Court has already dismissed plaintiffs' claims for benefits under § 1132(a)(1)(B), and that conclusion holds true even if the claims are styled as breaches of fiduciary duties.  See Varity, 516 U.S. at 512 (noting that § 1132(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims"); Keir v. Unumprovident Corp., 2010 WL 3566878, at *8 (S.D.N.Y. 2010).   Thus, the only other provisions under which the plaintiffs could claim relief for fiduciary breaches are § 1132(a)(2) and (a)(3).  See Crocco, 137 F.3d at 107 n.2.

ERISA § 1132(a)(2) provides that an "action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under [29 U.S.C. § 1109]," which in turn makes ERISA fiduciaries who breach their duties "personally liable to make good to [the] plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such

14

fiduciary which have been made through use of assets of the plan by the fiduciary," and which authorizes "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."  29 U.S.C. § 1109(a).  In Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985), the Supreme Court held that the fiduciary duty imposed by § 1109 runs to the plan, not to individual beneficiaries, and that "recovery for a violation of § [1109] inures to the benefit of the plan as a whole." Id. at 139; see also id. at 144 ("[T]he entire text of § [1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself."). Thus, individual beneficiaries can only seek relief under § 1132(a)(2) and § 1109 on behalf of the plan as a whole, not on their own behalf. Lee, 991 F.2d at 1009 ("Russell therefore bars plaintiffs from suing under Section [1132](a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."); Schnur, 621 F. Supp. 2d at 111-12 (under § 1132(a)(2) "Plaintiff may be entitled to bring suit to enforce fiduciary duties owed to the Plan and its beneficiaries as a group, but any appropriate monetary relief is owed to the Plan, not Plaintiff as an individual").

Here, the complaint speaks only of individual losses to the plaintiffs arising out of defendants' alleged actions in failing to pay benefits, placing plaintiffs' claims into pre-payment review, and providing plaintiffs with improper notice of the right to appeal denied claims.  There is "no effort to align [the plaintiffs'] cause with that of other Plan participants or beneficiaries or to suggest that Defendants' misconduct harmed the Plan as a whole." McGuigan v. Local 295/Local 851 I.B.T. Employer Group Pension Plan, 2011 WL 3421318, at *3 (E.D.N.Y. 2011); see Russell, 473 U.S. at 142 n.9 (noting "Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole"); L.I. Head Start Child Development Servs v. Economic Opportunity Comm., 634 F. Supp. 2d 290, 298 (E.D.N.Y. 2009) ("Courts have interpreted this provision to mean that in the case of a fixed benefits plan,

15

any recovery for a violation under section [1109] inures to the benefit of the plan as whole, and thus, such actions must be brought in a representative capacity on behalf of the plan rather than for the benefit of any particular individual").  Accordingly, to the extent they seek relief under § 1132(a)(2), the plaintiffs' claims are dismissed.

The plaintiffs also claim to seek "declaratory and injunctive relief related to enforcement of the plan terms" under § 1132(a)(3), in order "to clarify rights to future benefits or reimbursements" and "to prevent defendants from not paying Plaintiffs in the future."  (See Compl. ¶¶ 64, 71, 78; Pls. Opp. at 6.)  Under § 1132(a)(3), a  participant, beneficiary or fiduciary may bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief."  See Frommert v. Conkright, 433 F.3d 254, 269 n.13 (2d Cir. 2006) ("[C]laims by plan participants for breach of fiduciary duties arise under § [1132](a)(3).")

Although styled as requests for equitable relief, however, the plaintiffs are simply recasting their claims for the provision of benefits.   In Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court noted that §§ 1132(a)(3) and (5), ERISA's "catchall" provisions, "act as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy."  Id. at 512.  The Court went on to state that "we should expect that where Congress provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  Id. at 515.   Thus, courts have consistently refused to order injunctive relief that has the practical effect of ordering the provision of benefits under the plan, because such relief is available under § 1132(a)(1)(B).  In Frommert, for example, the Second Circuit held that where plaintiffs essentially seek "recalculation of their benefits consistent with the terms of the Plan," such a claim "falls comfortably within the scope of § [1132](a)(1)(B) . . . [and] there is no need .

16

. . to also allow equitable relief under § [1132](a)(3)."  433 F.3d at 270.  The court noted that "[w]hile the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."  Id.; see also Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112, 119 (2d Cir. 2009)("despite Kendall's assertions to the contrary, many of Kendall's claims are effectively claims for money damages outside the scope of § 1132(a)(3)");  Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 630 (2d Cir. 2008) ("In order to state a claim under ERISA section [1132](a)(3), 'the type of relief a plaintiff requests must . . . be equitable.'  Claims for money damages are therefore not cognizable under [that section]." (quoting Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir.2006));  Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 321 (2d Cir. 2003) ("In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label.") (citations omitted).

The thrust of the complaint in this case is that the defendants have "failed to follow proper procedures in denying the [plaintiffs'] claim[s] for benefits, which resulted in an improper denial of benefits owed . . . under the terms of the Plan."  Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011).  "[A]dequate relief for these claims is plainly available under Section [1132](a)(1)(B)."  Id.  The fact that the plaintiffs have currently brought their § 1132(a)(1)(B) claims against the wrong defendant does not alter the fact that relief was available to them under that section.  See Keir, 2010 WL 3566878 at *8 ("The fact that the Plaintiffs have not brought a § [1132](a)(1)(B) claim does not alter the fact that benefits are the gravamen of Plaintiffs' remaining request for relief and that redress is available under § [1132](a)(1)(B).");  Schnur, 621 F. Supp. 2d at 112 (also rejecting fiduciary duty claim against insurer because "claims for damages payable directly to the plan

beneficiary must be sought under 29 U.S.C. 1132(a)(1)(B), and not on a breach of fiduciary duty theory"); Klecher v. Metro. Life Ins. Co., 331 F. Supp. 2d 279, 288 (S.D.N.Y. 2004) (rejecting plaintiff's attempt to "repackage her unsuccessful breach of fiduciary duty claim to evade both § 1132(a)(1)(B)'s . . . and § 1132(a)(2)'s requirement[s]").  The plaintiffs certainly should not be allowed to evade the requirements of § 1132(a)(1)(B), including the rules regarding proper defendants, simply by parroting the language of § 1132(a)(3).  Accordingly, the plaintiffs' vague requests for declaratory and injunctive relief under § 1132(a)(3) are dismissed.

Finally, the plaintiffs request the defendants' "removal as breaching fiduciary," also purportedly under § 1132(a)(3).  As an initial matter, in claiming that the Court should remove a fiduciary, the plaintiffs appear to be invoking language from § 1132(a)(2).  The Court has already held, supra, that because the plaintiffs are not acting on behalf of the plan as a whole, they are not entitled to relief under that provision.  The plaintiffs cite to no authority whereby a court may order the removal of a fiduciary under § 1132(a)(3) on behalf of individual plan beneficiaries—let alone with respect to several dozen benefit plans at once.  Indeed, as the defendants point out, it would seem that the employers and plans entities would be necessary parties to any such action.  The plaintiffs have not made any arguments in support of this requested relief in their opposition papers, and thus the claim must be dismissed.

In fact, the plaintiffs have made no effort to clarify any of the equitable relief they are seeking, but rather focus their briefing almost entirely on their claims for past benefits.  "[I]t is not for the Court to speculate as to what declaratory or injunctive relief" a represented party is seeking under this complex statutory scheme.  Biomed Pharmaceuticals, 775 F. Supp. 2d at 736. The Court therefore need not consider hypothetical circumstances under which an entity in the defendants' position might be liable for some form of equitable relief under § 1132(a)(3), as the plaintiffs have not articulated any such claim here.

The Court dismisses the claims for equitable relief in Counts Two through Six of the complaint. To the extent the allegations in those counts are relevant to a claim for benefits under § 1132(a)(1)(B) they are dismissed without prejudice as provided above.

### iv. "Full and Fair Review"

The fifth cause of action alleges that the defendants denied the plaintiffs a "full and fair review" of their claims under 29 U.S.C. § 1133. As described previously, the plaintiffs allege that the defendants "placed plaintiffs' claims into pre-payment review, sent onerous and unnecessary questionnaires . . . to unsuspecting patients, provided improper notice of the right to review of denied claims, made appeals of valid claims futile, and ultimately failed to pay valid claims." (Compl. ¶63.) The plaintiffs also allege that the defendants "fail[ed] to disclose the 'specific reasons' for benefits denials," "fail[ed] to disclose data and/or methodology used to determine . . . reimbursement," and "provid[ed] boilerplate explanations, if any at all, for claim denial." (Compl. ¶¶ 69, 82.)

Section 1133 requires "every employee benefit plan" to "provide adequate notice in writing" regarding the specific reasons for benefits denials, and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Allegations that the defendant has "mishandled" benefits claims "through nondisclosure, misleading statements, and untimely responses" are appropriately characterized as claims for a full and fair review under § 1133. Krauss, 517 F.3d at 630. "A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review." Id.; see also Pastore v. Witco Corp. Severance Plan, 196 Fed. App'x 18, 21 (2d Cir. 2006) (remedy for inadequate explanation of decision to deny benefits is remand (citing Quinn v. Blue Cross and Blue Shield Ass'n, 161 F.3d 472, 477 (7th Cir. 1998)). Here, however, the

19

plaintiffs make clear that they are not seeking to have their claims remanded, because they argue remand would be "futile."  (Compl. ¶ 84; Pls. Opp. at 11.)

Courts have in some instances held that where remand would be futile, it is not necessary. However, futility has seemingly been applied in this context to mean that remand is not necessary because the claimant is clearly not entitled to benefits.  See Krauss, 517 F.3d at 630; Giordano v. Thomson, 564 F.3d 163, 167 (2d Cir. 2009); Wagner v. Metropolitan Life Ins. Co., 2011 WL 2638143, *18 (S.D.N.Y. 2011).  The Court is aware of no comparable authority, and the parties have cited none, suggesting that in such circumstances § 1133 creates a remedy for damages against the insurer.  See Smith v. Champion Inter. Corp., 220 F. Supp. 2d 124, 128-29 (D. Conn. 2002) ("Defendant correctly notes that § 1133 does not give rise to a private cause of action for compensatory or punitive relief. . . .  [T]he usual remedy for a violation of § 1133 would be equitable in nature, such as remanding plaintiffs' claims for benefits to the LTD Plans administrator or fiduciary for a 'full and fair' review.")

Accordingly, because the plaintiffs seek monetary relief, rather than a remand, the Court concludes that such a cause of action is not tenable.  The claim for "full and fair review" is therefore dismissed.  However, the Court will dismiss this claim without prejudice, given that the defendants appear to concede that, were the plaintiffs to seek a remand remedy, one or more of them might be the proper party to such an action in their capacity as "designee[s]" of the plan administrator.  (Defs. Mem. at 24.)

### B.  State Law Cause of Action

The seventh and final cause of action alleges a claim for "tortious interference with business relations."  (Compl. ¶¶ 91-94.)  The plaintiffs allege that in preemptively denying claims and seeking pre-payment review the defendants interfered with their ability to treat and establish business relations with patients and other sources of referrals.  Defendants argue that

this claim is preempted by ERISA and that, in any event, the amended complaint fails to establish a cause of action under state law.

Both the parties have requested that, even if the Court decides that the state claim is not ERISA preempted, it nevertheless retain supplemental jurisdiction over this claim under 28 U.S.C. § 1367 and decide it on the merits of New York state law.  See Mauro v. Southern New England Telecomm., Inc., 208 F.3d 384, 388 (2d Cir. 2000) (district court did not err in exercising supplemental jurisdiction over state law claims even after dismissing federal claims because "[d]eclining jurisdiction over the state-law claims in this case would have furthered neither fairness nor judicial efficiency, nor did those causes of action require the district court to resolve any novel or unsettled issues of state law"); Kashelkar v. Bluestone, 2007 WL 2809874, at *2 (S.D.N.Y. 2007) ("[I]t is appropriate to exercise supplemental jurisdiction to rule on the merits of Plaintiff's state claims notwithstanding the dismissal of the federal claims, because all of the claims arise from the same set of operative facts . . . and because the interests of justice would not be served by requiring Defendants oppose those claims in a new state court litigation.").

i.  *ERISA Preemption*

According to its preemption clause, "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a). As the Supreme Court has stated, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).  Accordingly, "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted."  Diduck v. Kaszycki & Sons Contractors Inc., 974 F.2d 270, 288 (2d Cir.1992), abrogated on other grounds,

Gerosa, 329 F.3d at 322-23, 327-28.  ERISA's preemption provision does not, however, foreclose every state action that has some effect on an ERISA plan.  See, e.g., Geller v. County Line Auto Sales, Inc., 86 F.3d 18, 23 (2d Cir.1996) ("The plaintiffs' common law fraud claim, which seeks to advance the rights and expectations created by ERISA, is not preempted simply because it may have a tangential impact on employee benefit plans."); Connecticut General Life Ins. v. Pataki, 1997 WL 128492, at *4 (S.D.N.Y. 1997) (finding no preemption because "the [ERISA-governed] plan [is] only the context in which this garden variety [state law cause of action] . . . occurred").

To the extent that the plaintiffs seek "unpaid benefits" as relief for the tortious interference claim, they are clearly preempted.  (See Compl. ¶94.)  The Supreme Court has emphasized that where plaintiffs "bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans," such actions are preempted by ERISA's section 1132. Davila, 542 U.S. at 214; see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987) 56 ("[T]he civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § [1132](a)."); Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146 (2d Cir. 1989) ("[L]aws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA.").

Furthermore, even as to the plaintiffs' claims for damages beyond benefits—such as damages caused by the loss of business revenue—the cause of action alleged in this case still "relate[s] to" the employee benefits plans at issue.  The plaintiffs are in essence alleging that the defendants improperly reviewed and denied their claims, which were submitted under ERISA-governed plans, for the purpose of discouraging Aetna members from seeking chiropractic treatment at Non-PAR providers.  To find the defendants liable in this context would necessarily

require analyzing the propriety of the actions they took in processing claims for benefits under the terms of the plans, thus clearly implicating the arena of ERISA.  See Stevenson v. Bank of New York Co., Inc., 609 F.3d 56, 61 (2d Cir. 2010) (noting that considerations in preemption analysis include whether resolution of the claim "require[s] a court to review the propriety of [a] . . . determination of benefits under such a plan" or would effect "the actual administration" of a plan).  Although styled as interference into the relationship between the chiropractors and their patients, the claim is still fundamentally linked to the denials of benefits and the defendants' methods of handling claims.  Accordingly, "interpretation of the terms of [the] benefit plans forms an essential part" of the cause of action, and potential liability would be inextricably bound up with "the particular rights and obligations established by" those plans and by ERISA itself.  Davila, 542 U.S. at 213.  The Court does not here hold that tortious interference claims will always be preempted by ERISA.  In this case, since the plaintiffs' claim is targeted at the same substantive and procedural concerns that ERISA addresses, it is preempted.

*ii.   Validity Under New York Law*

Even if the Court were to find that the tortious interference claim were not preempted, it clearly fails under state law.   The plaintiffs concede that they have not pleaded interference with existing contractual relations, but rather "tortious interference with prospective business relations."  (Pls. Opp. at 12) (emphasis added).  To make out such a claim under New York law, a plaintiff must prove that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir.2003).  In all but the most egregious circumstances, "dishonest, unfair, or improper means" must amount to misconduct that constitutes either a crime or an independent tort. See Carvel Corp. v. Noonan, 3

N.Y.3d 182, 190-91 (2004).  If the conduct at issue is not "criminal or independently tortious," a plaintiff must typically prove that the "defendant engage[d] in conduct for the sole purpose of inflicting intentional harm."  Id. at 190; see M.V.B. Collision. Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 215 (E.D.N.Y. 2010) ("In the years since Carvel, courts have been reluctant to find non-criminal or non-tortious conduct nonetheless sufficiently malicious or culpable to satisfy the 'wrongful means' element."); Friedman v. Coldwater Creek Inc., 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008).  A motive of "normal economic self-interest" is inconsistent with a sole purpose of inflicting intentional harm.  Carvel Corp., 3 N.Y.3d at 190.  Moreover, the New York Court of Appeals has emphasized that the type of wrongful economic pressure that may give rise to tortious interference liability must be "directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."  Id. at 192.

Here, the plaintiffs' allegations themselves show that, at most, the defendants acted to further their own economic self-interest by paying out fewer claims or encouraging patients to use in-network providers.  (See, e.g., Compl. ¶ 77.)  The plaintiffs do not argue that the defendants' conduct was somehow criminal.  In their opposition papers, they cursorily assert that the defendants' conduct may have amounted to the tort of "fraud or misrepresentation," but make no effort to support that claim.  In any event, the complaint does not establish a claim for common law fraud, as there are no allegations that the defendants misrepresented a material fact or that the plaintiffs relied on such a misrepresentation.  See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 651 F.Supp.2d 155, 170 (S.D.N.Y. 2009) (reciting elements of common law fraud).

Furthermore, most of the conduct that the plaintiffs are contesting, namely the manner in which the defendants processed the plaintiffs' benefits claims, was only directed at the plaintiffs themselves.  The complaint itself implies that the plaintiffs' patients have not been harmed at all:

instead, the plaintiffs rendered the chiropractic services and then assumed the obligations of obtaining payment directly from the insurance companies.  The patients do not appear to have incurred any additional obligations or hardships beyond their normal co-payment.  The only conduct directed at the patients were the follow-up questionnaires that allegedly required the patients "to complete answers to lengthy interrogatories designed to impute the good reputation of the plaintiffs and insinuate disparaging remarks about them."  (Compl. ¶ 37.)  The plaintiffs do not argue, and the complaint does not establish, that these questionnaires constitute the tort of defamation, and requiring patients to fill out interrogatories concerning the basis for treatment does not rise to the level of "wrongful means" that would constitute tortious interference.

In sum, the Court holds that the plaintiffs' state law claim is preempted.  Alternatively, it fails as a matter of law, and is dismissed.

### C.  Conclusion

Accordingly, the defendants' motion to dismiss the complaint is granted in full.  This dismissal is with prejudice, with the exception of the plaintiffs' claims for benefits under 29 U.S.C. § 1132(a)(1)(B) and their claim for "full and fair review," which are dismissed without prejudice.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      March 12, 2012

                                     _____/s/_____
                                     Hon. Carol B. Amon
                                     Chief United States District Judge